IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ABRAHIM BUSH ABRAHIM MANAGO, )
)
                Petitioner, )
)
v. )   Case No. 25-3183-JWL
)
C. CARTER, Warden, FCI-Leavenworth; )
RICARDO WONG, Field Office Director, )
   ICE ERO Chicago; )
TODD LYONS, Acting Director, )
   Immigration and Customs Enforcement; )
KRISTI NOEM, Secretary, )
   Department of Homeland Security; and )
PAMELA BONDI, Attorney General, )
)
                Respondents. )
)
_____)

## **MEMORANDUM AND ORDER**

Petitioner, through counsel, filed a petition for habeas corpus under 28 U.S.C. § 2241, by which he challenges his detention by immigration officials. For the reasons set forth below, the Court **grants** the petition. Respondents shall release petitioner from custody, subject to an appropriate order of supervision, by **October 17, 2025**, and shall provide notice to this Court when that release is effected.

Petitioner is a native and citizen of Sudan. Petitioner entered the United States unlawfully in July 2024, and he was detained by immigration officials shortly thereafter. Removal proceedings were initiated, and on January 28, 2025, an immigration judge ordered removal but granted petitioner withholding of removal to Sudan (meaning he could

only be removed to an alternative third country). Petitioner is presently detained within this judicial district. On September 3, 2025, petitioner filed the instant habeas action; respondents have filed a response to the petition, petitioner has filed a reply brief, and the matter is therefore ripe for ruling.[1]

Petitioner claims that his continued detention by immigration authorities is improper. To obtain habeas corpus relief, petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S. C. § 2241(c)(3). This Court has habeas corpus jurisdiction to consider the statutory and constitutional grounds for immigration detention that are unrelated to a final order of removal. *See Demore v. Kim*, 538 U.S. 510, 517–18 (2003).

Generally, when an alien is ordered removed, the removal is to occur within a period of 90 days, referred to as the "removal period." *See* 8 U.S.C. § 1231(a)(1)(A). The parties agree that petitioner's removal period began on February 27, 2025, when his order of withholding became administratively final after neither side filed an appeal within 30 days. *See id.* § 1231(a)(1)(B)(i); 8 C.F.R. § 1241.1(c). Specifically, petitioner claims that, after more than six months since the beginning of the removal period, his detention has become unreasonably indefinite, and that his release is therefore required under the framework set forth by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001).

In *Zadvydas*, the Supreme Court noted that an alien must be detained during the 90-day removal period and that the Government may continue to detain an alien after that

---

[1] By Memorandum and Order of September 5, 2025, the Court denied petitioner's motion for a temporary restraining order.

period or release the alien under supervision. *See id.* at 683 (citing 8 U.S.C. § 1231(a)(2), (6)). The Court held, however, that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by the statute." *See id.* at 699. The Court elaborated on that standard as follows:

> In answering that basic question, the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions. . . .
>
> We recognize, as the Government points out, that review must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to "speak with one voice" in immigration matters. But we believe that courts can take appropriate account of such matters without abdicating their legal responsibility to review the lawfulness of an alien's continued detention.

*See id.* at 699-700 (citations omitted). The Supreme Court then established a presumptively reasonable detention period of six months in which to accomplish removal, after which the reasonableness of an alien's detention should be determined as follows:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has

3

been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*See id.* at 701; *see also, e.g.*, *Anyimu v. Department of Homeland Security*, 2017 WL 193180, at *2-3 (D. Kan. Jan. 18, 2017) (Lungstrum, J.) (applying this framework); *Kaliku v. United States Immigration and Customs Enforcement*, 2024 WL 4854523, at *2-3 (D. Kan. Nov. 21, 2024) (Lungstrum, J.) (same); *Vargas v. Noem*, 2025 WL 2770679, at *2-3 (D. Kan. Sept. 29, 2025) (Lungstrum, J.) (same).

The Court finds that petitioner has met his burden to provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" in his case. The Court disagrees with respondents' contention that petitioner can point to nothing more than the failure to effect his removal within six months. Petitioner has now been detained more than seven months since his removal order became final. As petitioner notes, because he cannot be removed to his home country under the withholding order, officials must find a third country that is willing to accept him, and petitioner has no ties to any other country. Petitioner further notes that it may be difficult to remove him to a third country in the area of his home country because he would be able to prevent such a removal based on a credible fear that he would nonetheless be returned to his home country. Petitioner also relies on the fact that officials have already attempted and failed to remove him to four alternative countries, and the Court agrees that the fact that officials have been unsuccessful with their first choices suggests that officials will have difficulty eventually finding a country that will accept petitioner.

The Court further concludes that respondents have not rebutted that showing by petitioner. In a declaration submitted by respondents, an immigration official states only that "DHS has attempted to remove Petitioner to four alternative countries, including to Chad, Egypt, Saudi Arabia and South Sudan;" and that "ICE will continue its efforts to identify alternative countries to which Petitioner can be removed." The Court does not find such evidence to be sufficient, however. The declarant claims that officials have attempted to remove petitioner to four different countries, but he does not describe those attempts at all. Thus, it is not clear whether requests were actually sent to those other countries, and if so, what responses were received. Nor does the declarant state when those "attempts" were made, and thus respondents have not shown that any efforts have been undertaken in the recent past. Neither respondents nor the declarant has identified any additional country that has been investigated or considered, or identified any country to which removal might be possible. Nor have respondents offered any evidence explaining why officials have not been able to undertake any additional efforts in petitioner's case.

In sum, respondents have not been able to provide evidence or even point to any specific fact that creates a significant likelihood that, even though officials have failed in their attempts to remove petitioner to a third country, and even though they have seemingly made no additional efforts regarding other countries, petitioner will nonetheless be removed to a third country in the reasonably foreseeable future. Petitioner's detention has become unreasonably indefinite, and the Court therefore concludes that petitioner must be released, subject to appropriate terms of supervision. *See Zadvydas*, 533 U.S. at 700.

Accordingly, the Court grants the petition for habeas relief, and respondents are ordered to effect petitioner's release by **October 17, 2025**.

IT IS THEREFORE ORDERED BY THE COURT the petition for habeas corpus pursuant to 28 U.S.C. § 2241 is hereby **granted**. Respondents shall release petitioner from custody, subject to an appropriate order of supervision, by **October 17, 2025**, and shall provide notice to this Court when that release is effected.

IT IS SO ORDERED.

Dated this 7th day of October, 2025, in Kansas City, Kansas.

/s/  John W. Lungstrum
Hon. John W. Lungstrum
United States District Judge